Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **MCG THERAPY GROUP, LLC** <br> Parte peticionaria <br><br> v. <br><br> **ARLENE J. MAESTRE RIVERA Y OTROS** <br> Parte recurrida | **KLCE202500513** <br><br> CONSOLIDADO CON: | **CERTIORARI** <br> Procedente del Tribunal de Primera Instancia, Sala Superior de **Arecibo** <br><br> Caso Núm.: <br> **AR2023CV00580** <br><br> Sobre: <br> **DAÑOS Y OTROS** |
| **ARLENE J. MAESTRE RIVERA Y OTROS** <br> Parte peticionaria <br><br> v. <br><br> **MCG THERAPY GROUP, LLC** <br> Parte recurrida | **KLCE202500518** | **CERTIORARI** <br> Procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo <br><br> Caso Núm.: <br> **AR2023CV00580** <br><br> Sobre: <br> **DAÑOS Y OTROS** |

Panel integrado por su presidenta la Jueza Grana Martínez, el Juez Campos Pérez y el Juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 26 de junio de 2026.

Comparecen ante nos las peticionarias MCG Therapy Group LLC, en adelante, MCG, Arlene Maestre Rivera, en adelante, Maestre Rivera y AM Therapeutic Service for Children, Inc., en adelante, AM Therapeutic Service solicitando que revisemos la *"Resolución"* del 2 de abril de 2025, notificada por el Tribunal de Primera Instancia, Sala Superior de Arecibo, en adelante, TPI-Arecibo. En la misma, el Foro Primario *descalificó a tres (3) abogados.*

Por los fundamentos que expondremos a continuación, **denegamos** expedir el auto solicitado.

# I.

Si bien el recurso de autos se refiere a la descalificación de varios abogados durante el mes de abril del año 2025, resulta necesario que hagamos el siguiente recuento breve procesal, a manera de ilustrar las razones por las que nos encontramos adjudicando *ahora* este asunto.

Este caso tiene su génesis el 3 de abril de 2023, cuando MCG presentó una *"Demanda"* contra Maestre Rivera, quien ofrece sus servicios como terapeuta a estudiantes de educación especial, a través de AM Therapeutic Service.[1] La demanda versó sobre incumplimiento de contrato, daños y perjuicios e interferencia torticera. El 12 de julio de 2023 se enmendó la demanda original para incluir a AM Therapeutic Service.[2]

Luego de algunos incidentes procesales, el 10 de agosto de 2023 el TPI dictó una *"Sentencia Parcial"*, en la que declaró *"Con Lugar"* una moción de desestimación presentada por Maestre Rivera, a los efectos de desestimar una de las causas de acción en su contra.[3] Inconforme con ello, el 27 de octubre de 2023, MCG presentó un recurso apelativo ante este nos. Mediante *"Sentencia"* del 8 de agosto de 2024 confirmamos el dictamen apelado.[4] No obstante, el 9 de septiembre de 2024, MCG recurrió mediante recurso de *Certiorari* al Tribunal Supremo de Puerto Rico, el cual fue denegado. Sin embargo, MCG solicitó al Alto Foro que reconsiderara.

Por su parte, el proceso litigioso de este caso, que ha sido curvo y en extremo contencioso, continuó su curso. Luego de sancionar y reprender en múltiples ocasiones a los representantes legales de las partes, el TPI-Arecibo citó a una vista el 11 de marzo de 2025, para dilucidar una situación acaecida durante la

---

[1] SUMAC, Entrada Núm. 1.
[2] SUMAC, Entrada Núm. 11.
[3] SUMAC, Entrada Núm. 30.
[4] KLAN202300959.

deposición del perito Dr. Juan Villeta Trigo. Ese mismo día, el Foro Recurrido emitió un dictamen sancionado a los abogados de MCG, por entender que estos ocultaron evidencia de manera intencional. También, expuso que no permitiría el uso de la deposición del perito en cuestión en el caso de autos.[5]

Luego, mediante *"Resolución"* del 2 de abril de 2025, el Foro Primario *descalificó* a los abogados de MCG, la Lcda. Kyra Dávila Torres y la Lcda. Catalina Sierra López; al igual que descalificó al abogado de Maestre Rivera, el Lcdo. Jaime Alcover Delgado.[6]

Advertimos brevemente que, paralelo a este asunto, siendo el 12 de mayo de 2025, nuestro Tribunal Supremo acogió en reconsideración el recurso de *certiorari* previamente discutido.

Inconforme con la descalificación de sus abogadas, el 9 de mayo de 2025, MCG compareció ante nos mediante *"Petición de Certiorari"*. En su recurso, hizo los siguientes señalamientos de error:

> **PRIMER ERROR**: Erró el TPI al emitir una resolución descalificando a las abogadas de MCG sin haber oído los planteamientos de la parte demandante.
>
> **SEGUNDO ERROR**: Erró el TPI al haber impuesto la medida extrema de descalificación, existiendo otros remedios menos onerosos para atender las disputas entre los abogados.
>
> **TERCER ERROR**: Erró el TPI y abusó de su discreción al haber determinado, sin haber dilucidado la controversia elevada a su atención, que MCG incumplió con su deber continuo de informar.

Junto a su petitorio, añadió una *"Moción en Auxilio de Jurisdicción"*, solicitando que paralizáramos los procesos ante el TPI-Arecibo, hasta tanto se atienda el asunto sobre la descalificación de los abogados.

---

[5] SUMAC, Entrada Núm. 327.
[6] SUMAC, Entrada Núm. 347.

El 12 de mayo de 2025, emitimos una *"Resolución"* declarando *"Con Lugar"* la petición de auxilio, paralizando así los procesos ante el Foro Primario. Además, concedimos a Maestre Rivera hasta el 19 de mayo de 2025 para oponerse al recurso presentado por MCG.

Sin embargo, ese mismo día, siendo el 12 de mayo de 2025, Maestre Rivera y AM Therapeutic Service presentaron un recurso de certiorari, impugnando, de igual forma, la descalificación de su abogado. En su petitorio, presentaron los siguientes señalamientos de error:

**PRIMER ERROR**: Erró el Tribunal de Primera Instancia al descalificar al Lcdo. Jaime A. Alcover Delgado en contravención a lo resuelto en *Otaño v. Vélez*, 141 DPR 820, dado que violentó el debido proceso de ley tanto de la parte que el letrado representa, como del propio abogado al no velar que el descalificado tenga la oportunidad de ser oído y presentar prueba en su defensa, siendo esto una violación al debido proceso de ley que le asiste al abogado y a la parte que representa, representando la negativa de así hacerlo un error de derecho que redundaría en un fracaso de la justicia.

**SEGUNDO ERROR**: Erró el Tribunal de Primera Instancia al tomar en consideración una moción que el propio Tribunal resuelve en dos instancias distintas que no cumple con las disposiciones de la Regla 67.1 y la Regla 9 de Procedimiento Civil, por ende haciendo las resoluciones de descalificación nulas de su faz, en la medida que se tomó en cuenta un escrito presentado por la parte demandada, la Sra. Arlene Maestre, que no cumplía con el precepto constitucional de notificación adecuada, comprendido en lo que es el debido proceso de ley conforme el Artículo II, Sección 7 de la Constitución del Estado Libre Asociado, constituyendo esto un error de derecho manifiesto que redundaría en un grave fracaso a la justicia.

**TERCER ERROR**: Erró el Tribunal de Primera Instancia al penalizar a la parte demandada, la Sra. Arlene Maestre y a su representante legal, en la medida que ante un ;legítimo reclamo basado en la presentación y utilización de evidencia previamente solicitada, cuya existencia nos fuere negada y que obra en poder de la parte demandante desde

la fecha que indican los documentos, el Tribunal de Primera Instancia abusó de su discreción al descalificar al abogado que precisamente trae la controversia suscitada ante la atención del foro basándose únicamente en una moción que no cumplía con la Regla 67.1, o sea la adecuada notificación, por incumplir con la OAJP-2017-14, y ser notificada de manera incompleta sin sus anejos de manera intencional, lo que de por si debió haber sido considerado bajo lo resuelto en *Otaño Cuevas v. Velez Santiago*, 141 DPR 820 (1996) y *Job Connection Center v. Sups. Econo*, 2012 TSPR 85, (2012) como una moción disruptiva, con la intención de causar dilaciones.

**CUARTO ERROR**: Erró el Tribunal de Primera Instancia al no resolver absolutamente nada sobre la legítima controversia que se le trajera ante su consideración sobre la presentación de prueba sorpresiva por parte de la parte demandante durante la toma de deposición de la parte demandada, la cual había sido previamente solicitada, y cuya existencia fuera negada por dicha parte, a pesar de estar en posesión de la evidencia solicitada, y luego proceder a descalificar al abogado de la parte demandada, sin tomar en consideración lo resuelto en *Otaño Cuevas v. Velez Santiago*, 141 DPR 820 (1996) y *Job Connection Center v. Sups. Econo*, 2012 TSPR 85, (2012), basándose única y exclusivamente en una moción presentada precisamente por la parte demandante que no cumplía con la Regla 9 y 67.1 de Procedimiento Civil constituyéndose esta en una presentada con la intención de dilatar los procesos.

Junto a su petitorio, añadió una *"Moción Urgente en Auxilio de Jurisdicción"*, solicitando que paralizáramos los procesos ante el TPI-Arecibo. El 12 de mayo de 2025, emitimos una *"Resolución"* declarando *"Con Lugar"* la misma, y concediéndole a MCG hasta el 22 de mayo de 2025 para presentar su oposición al recurso.

Sin embargo, el 20 de mayo de 20254, MCG radicó una *"Solicitud de Consolidación de Recursos Sobre una Misma Resolución"*. El 27 de mayo de 2025, *ordenamos la consolidación de los recursos de autos.*

En consideración al recurso relevante al caso de autos que se encontraba ante la evaluación del Tribunal Supremo de Puerto Rico, este Panel determinó prudente detener la adjudicación del mismo hasta tanto no se expresara nuestra Máxima Curia. Luego de evaluar el expediente y los alegatos de las partes, nuestro Alto Foro resolvió revocar nuestro dictamen, y devolver el caso al TPI-Arecibo para la continuación de los procedimientos.[7] Evaluada la *Opinión y Sentencia* dictada por nuestro Tribunal Supremo, constatamos que no existe impedimento jurídico para entender sobre el asunto de marras.

**II.**

### A. Certiorari

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Allio v. Santiago Chardón*, 2026 TSPR 13, 217 DPR ___ (2026); *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *800 Ponce de León v. AIG*, 205 DPR 163, 174-175 (2020).

Ahora bien, tal discreción no opera en lo abstracto. Con respecto a lo anterior y para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por

---

[7] *MCG Therapy Group, LLC v. Arlene J. Maestre Rivera; AM Therapeutic Service for Children, Inc.*, 2026 TSPR 56, 218 DPR ___ (2026).

excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

[. . .]

(Énfasis suplido).

Según se desprende de la citada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones. *Allio v. Santiago Chardón*, supra; *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 710-711 (2019).

Luego de auscultar si el recurso discrecional cumple con las disposiciones de la Regla 52.1 de Procedimiento Civil, supra, el tribunal procederá a evaluar el recurso a la luz de la Regla 40 del Reglamento del Tribunal de Apelaciones, supra. La mencionada Regla expone los criterios que esta Curia deberá considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008). Véase, además, *Rivera et al. v. Arcos Dorados et al.*, supra, pág. 209; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020).

Así, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, funge como complemento a la Regla 52.1 de Procedimiento Civil, *supra*. *Torres González v. Zaragoza Meléndez*, *supra*. La precitada Regla dispone lo siguiente:

El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

*In re Aprob. Enmdas. Reglamento TA*, supra, pág. 63; *Allio v. Santiago Chardón*, supra; *BPPR v. SLG Gómez-López*, 213 DPR 314, 337 (2023).

(Énfasis suplido).

Sin embargo, ninguno de los mencionados criterios es determinante por sí solo para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no

ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97. (Énfasis omitido).

Nuestro Tribunal Supremo ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *W.M.M., P.F.M. et al. v. Colegio*, 211 DPR 871, 902-903 (2023); *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000). *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). (Énfasis suplido).

### B. Descalificación de abogados

"El Código de Ética Profesional establece que es de primordial importancia instituir y mantener un orden jurídico íntegro y eficaz que goce de la completa confianza y apoyo de la ciudadanía." Preámbulo, 4 LPRA Ap. IX., *In re Ramos Sáenz*, 205 DPR 1089, 1101 (2020). Cónsono con ello, es sabido que el referido Código de Ética Profesional contiene las normas mínimas de conducta que regulan las actuaciones de los y las abogadas, tanto en su ámbito profesional como en otras actividades en las que se desenvuelvan. *In re Joglar Castillo*, 210 DPR 956, 965 (2022). Siendo así, un abogado, puede ser descalificado de la representación legal que ha asumido. En ese sentido, una orden de descalificación puede proceder mediante dos (2) vías de acción. La primera, para prevenir una violación a cualesquiera de los cánones de Ética Profesional. Mientras que la segunda, se fundamenta en la evitabilidad de actos disruptivos de los abogados durante el

trámite de un pleito. *ORIL v. El Farmer, Inc.*, 204 DPR 229, 241 (2020); *Job Connection Center v. Sups. Econo*, supra, pág. 596.

Ante ello, una descalificación puede ser ordenada a instancia propia del tribunal o presentarse a solicitud de parte. *ORIL v. El Farmer, Inc.*, supra, pág. 242; *Job Connection Center v. Sups. Econo*, supra, pág. 597. En el escenario, en que la descalificación sea por decisión del tribunal, no se requiere que se presente prueba sobre una violación ética, toda vez que, en caso de duda, la apariencia de impropiedad podrá ser utilizada a favor de la descalificación. *Íd.* A contrario sensu, al ser una parte la que peticiona la descalificación, su presentación, no conlleva una determinación automática en favor de esta. *Íd.*

En este tipo de casos, el foro judicial, deberá llevar a cabo un análisis de la totalidad de las circunstancias. Ello, a la luz de los siguientes factores: (a) si quien solicita la descalificación tiene legitimación activa para invocarla; (b) la gravedad de la posible violación ética involucrada; (c) la complejidad del derecho o los hechos pertinentes a la controversia y el "expertise" de los abogados implicados; (d) *la etapa de los procedimientos en que surja la controversia sobre descalificación y su posible efecto en cuanto a la solución justa, rápida y económica del caso*; y (e) el propósito detrás de la descalificación, es decir, si la moción está siendo utilizada como mecanismo para dilatar los procedimientos. *ORIL v. El Farmer, Inc.*, supra; *Job Connection Center v. Sups. Econo*, supra, págs. 597-598.

A tenor con lo anterior, el juzgador que examina una moción de descalificación deberá evaluar las implicaciones de la continuación de la representación legal, es decir, si dicha representación legal, le causaría un perjuicio o una desventaja indebida a quien solicita la descalificación. *Torres Alvarado v. Madera Atiles*, 202 DPR 495, 504 (2019). Ahora bien, dicho

análisis debe ser uno cuidadoso, puesto que, "afecta de forma negativa varios aspectos, tales como los derechos de las partes y el trámite de los procedimientos." *Íd.* Siendo así, en dicho examen, la descalificación de un abogado solo procederá cuando sea estrictamente necesario. Así pues, el drástico remedio de la descalificación deberá ser descartado si existen otras "medidas menos onerosas que aseguren la integridad del proceso judicial y trato justo a las partes. *Job Connection Center v. Sups. Econo*, supra.

### III.

Las partes en este caso recurren ante esta Curia solicitando que revoquemos el dictamen que descalificó a los Licenciados previamente mencionados. Sin embargo, tomamos conocimiento judicial de la *"Solicitud de Renuncia a la Representación Legal"* radicada por MCG ante el TPI-Arecibo el 16 de diciembre de 2025. En la misma, se informó que la Lcda. Sierra López ya no se encuentra laborando en el bufete que representa legalmente a MCG.[8] Por lo tanto, con respecto a la licenciada, este recurso se ha tornado académico.

No obstante, luego de un examen sosegado del expediente ante nos, y conforme a la norma que nos obliga a determinar nuestra facultad de evaluar el recurso de epígrafe, nos vemos impedidos de expedir el recurso. Lo cierto es que, durante el descubrimiento de prueba, ocurrieron unos incidentes que le merecieron a ambos sanciones. Es nuestra apreciación que estos asuntos han incidido sobre el funcionamiento eficaz del caso.

Lo cierto es que no hemos apreciado perjuicio, error o parcialidad en la determinación del Foro Recurrido. Máxime cuando ambas partes, aun con las descalificaciones de abogado aquí impugnadas, *cuentan con otros abogados de récord.*

---

[8] SUMAC, Entrada Núm. 378.

Según lo dispuesto en la Regla 52.1 de Procedimiento Civil, *supra* y los criterios evaluativos de la Regla 40 de nuestro Reglamento, *supra,* estamos impedidos de entrar en los méritos de la polémica ante nos, si no se demuestra fracaso irremediable de la justicia.

## IV.

Por los fundamentos que anteceden, **denegamos** *expedir el recurso solicitado.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Grana Martínez emite un voto particular.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones

Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **MCG THERAPY GROUP, LLC** Parte peticionaria v. **ARLENE J. MAESTRE RIVERA Y OTROS** Parte recurrida | **KLCE202500513** CONSOLIDADO CON: | **CERTIORARI** Procedente del Tribunal de Primera Instancia, Sala Superior de **Arecibo** Caso Núm.: **AR2023CV00580** Sobre: **DAÑOS Y OTROS** |
| **ARLENE J. MAESTRE RIVERA Y OTROS** Parte peticionaria v. **MCG THERAPY GROUP, LLC** Parte recurrida | **KLCE202500518** | **CERTIORARI** Procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo Caso Núm.: **AR2023CV00580** Sobre: **DAÑOS Y OTROS** |

Panel integrado por su presidenta la Jueza Grana Martínez, el Juez Campos Pérez y el Juez Pérez Ocasio

## VOTO PARTICULAR DE LA JUEZA GRANA MARTÍNEZ

En *Job Connection Center v. Sups. Econo*, 185 DPR 585 (2012) el Tribunal Supremo de Puerto Rico aclaró que las órdenes de descalificación de abogado son revisables de acuerdo con la Regla 52.1 de Procedimiento Civil, 32 L.P.R.A. Ap. V, ya que esperar a una apelación constituiría un fracaso irremediable de la justicia. De igual manera, la decisión, sostuvo, es una impregnada de un alto grado de discreción que tiene dicho foro en el manejo procesal de un caso. Razón por la cual, si se demuestra que, hubo un craso abuso de discreción, que el foro primario actuó con prejuicio o parcialidad, que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que la intervención en esa etapa evitará un perjuicio sustancial



estamos llamados a intervenir. Véase, además, *ORIL v. El Farmer, Inc.*, 204 DPR 229 (2020).

Los procesos de descalificación no son acciones disciplinarias de por sí. Sino una medida preventiva que sirve dos propósitos; evitar posibles infracciones a los cánones del Código de Ética Profesional, así como asegurar la adecuada marcha de un litigio, evitando los actos disruptivos provenientes de los representantes legales. Durante el manejo del caso, el juzgador siempre conservará la potestad de descalificar a un abogado o una abogada si es necesario, para lograr la solución justa, rápida y económica de los pleitos. Función inherente de su posición. *ORIL v. El Farmer, Inc.*, supra.



Lo medular es que al evaluar sustantivamente si procede la descalificación el foro analice la totalidad de las circunstancias para valorar si la actuación del abogado o abogada constituye un "acto disruptivo" o si tiene el potencial de desembocar en una violación de los cánones del Código de Ética Profesional. **Tampoco será necesario que el tribunal reciba prueba adicional si la descalificación responde a la necesidad del juez o de la jueza de agilizar el trámite de un pleito.** En esos casos, de ordinario, las circunstancias que motivan la descalificación han ocurrido en presencia del juez o jueza que maneja el caso. *ORIL v. El Farmer, Inc.*, supra.

El tracto procesal durante el descubrimiento de prueba entre los abogados descalificados ciertamente se distancia de aquella conducta generosa y considerada que se deben los compañeros abogados y abogadas y que influye en la buena relación entre compañeros de la profesión impactando la marcha adecuada del litigio, responsabilidad inherente del juzgador. Después de todo, nadie agradece un proceso judicial lento pues justicia lenta no es

justicia o no es justicia ideal.[1] Y en ese norte estamos todos los componentes del ministerio de hacer justicia, juzgadores y representantes legales. Todos debemos velar por la adecuada marcha del litigio pues, al final del día, no se trata de ganar se trata de lograr que la verdad prevalezca.

Un examen de la Resolución recurrida y del tracto procesal durante el descubrimiento de prueba, incluyendo las múltiples advertencias del juez y sanciones impuestas durante el proceso, me convence de que no estamos ante un craso abuso de discreción, tampoco el juzgador actuó con prejuicio o parcialidad, ni se equivocó en la interpretación o la aplicación de la norma procesal o de derecho sustantivo. Y, por último, tampoco nos encontramos ante la posibilidad de un perjuicio sustancial que exija nuestra intervención. Razones por la cual, al igual que mis compañeros, denegaría el recurso.

En San Juan, Puerto Rico, a 26 de junio de 2026.

Grace M. Grana Martínez
Jueza del Tribunal de Apelaciones

---

[1] Opinión disidente y concurrente emitida por el ex Juez Presidente Hernández Denton en *In Re Pagani Padró*, 181 DPR 517 (2011); Voto particular emitido por la ex Jueza Presidenta Naveira Merly, al cual se unen el ex Juez Presidente Andréu García y los ex Jueces Asociados Señores Hernández Denton, Alonso Alonso y Fuster Berlingeri. en *In Re Reforma Judicial*, 136 DPR 1 (1994).